IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HESAM SHABANI,                              )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )        Civil Action 1:25-cv-1627 (RDA/WEF)
                                           )
MARCO RUBIO, et al.,                       )
                                           )
        Defendants.                        )
                                           )
_____       )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Secretary of State Marco Rubio,

U.S. Department of State, Consul General, U.S. Embassy in Yerevan, Secretary of Homeland

Security Markwayne Mullin,[1] and Director of U.S. Citizenship and Immigration Services

Joseph B. Edlow's Motion to Dismiss for lack of jurisdiction and for failure to state a claim

(the "Motion"). Dkt. 7. This Court has dispensed with oral argument as it would not aid in the

decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for

---

[1] When this case was filed, the Secretary of Homeland Security was Kristi Noem. Markwayne Mullin is now the Secretary of Homeland Security. Federal Rule of Civil Procedure 25(d) provides that "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] . . . [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name . . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullen has been substituted as the Defendant upon his swearing in as Secretary of Homeland Security.

disposition.   Considering the Motion together with the Complaint (Dkt. 1) and Defendants' Memorandum in Support (Dkt. 8), this Court GRANTS the Motion for the reasons that follow.[2]

## I. BACKGROUND

### A. Factual Background[3]

Plaintiff, Hesam Shabani, is a United States ("U.S.") citizen seeking an immigrant visa for his father Mahdi Shabaniverki.  On May 12, 2021, Plaintiff filed an I-130 Petition for his father. Dkt. 1 ¶ 4.a.  The petition filed by Plaintiff was approved and forwarded to the National Visa Center for consular processing.  *Id.*  On March 13, 2023, Plaintiff's father attended his visa interview at the U.S. Embassy in Yerevan, Armenia.  *Id.* ¶ 4.b.  After his interview, the U.S. Department of State issued Plaintiff's father a Section 221(g) refusal and placed him into further administrative processing.[4] Dkt. 1-1 at 7, 11.

Plaintiff alleges that since the March 2023 immigration interview, the case has remained in "administrative processing" with no final decision or timeframe.  Dkt. 1 ¶ 4.c.  Plaintiff notes

---

[2] Despite the issuance of a *Roseboro* Notice, Plaintiff did not file an Opposition to the Motion.  Dkt. 11.  Nonetheless, the Court has independently considered the merits of the Motion and does not rest on the failure to oppose the Motion in reaching the decision here.  *See Guzman v. Acuarius Night Club LLC*, 2026 WL 406093, at *3-4 (4th Cir. Feb. 13, 2026) (reversing district court because "Rule 12(b)(6) simply does not provide for any such default relief").

[3] For purposes of considering Defendants' Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] The non-final refusal of Mahdi Shabaniverki's immigrant visa was noted in an exhibit attached to Plaintiff's Complaint.  As such, this Court will analyze the Section 221(g) refusal as part of the Complaint.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

that, at the time of filing, more than 30 months had passed since the immigration interview. *Id.* ¶ 4.d. Plaintiff believes that the delay is unreasonable. *Id.* Plaintiff alleges that he attempted to follow up about his father's immigration status nine times with the U.S. Embassy in Yerevan, Armenia, four times with the Office of Senator Time Kaine, and twice with the Office of Senator Mark Warner. Dkt. 1-1 at 8. Despite the follow-up attempts, Plaintiff alleges that there has been no final decision regarding his father's immigration status. *Id.* at 1.

In reliance on these allegations, Plaintiff pleads two claims for relief. First, he alleges that Defendants' delay in the adjudication of his father's visa application violates the Administrative Procedure Act ("APA") under 5 U.S.C. § 706 and 5 U.S.C. § 555(b). Dkt. 1 ¶ 6. Additionally, Plaintiffs seek mandamus relief under the Mandamus Act, 28 U.S.C. § 1361, for the delay. *Id.*[5] Plaintiff asks this Court to order Defendants to complete adjudication of his father's immigration visa within 30 days, or within a timeframe this Court otherwise sees reasonable. *Id.* ¶ 7.

### B. Procedural Background

Plaintiff filed his Complaint on September 29, 2025. Dkt. 1. On November 25, 2025, Defendants filed the instant Motion and a Memorandum in Support. Dkt. 7, 8. Plaintiffs did not file a response in opposition.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over

---

[5] Although the Complaint sets out distinct APA and mandamus claims, courts have reviewed claims for unreasonable delay under the APA and mandamus claims together under the same standard. *See, e.g., Jahangiri v. Blinken*, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020); *see also South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) ("[C]laims of unreasonable delay can be properly addressed through a mandamus proceeding.").

which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1215 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

### III. ANALYSIS

Defendants move to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Dkt. 7. "Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (quoting *Steel Co. v. Citizens*

*for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *see also Zadeh v. Blinken*, 2024 WL 2708324, at \*4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Accordingly, the Court must first evaluate Defendants' Motion under Rule 12(b)(1) and, if the Court finds that there is no subject-matter jurisdiction, the Court need not address Defendants' other arguments.

Defendants contend this Court lacks subject matter jurisdiction because Plaintiff cannot identify a clear, non-discretionary duty for Defendants to re-adjudicate Plaintiff's fathers already-refused immigrant visa application.[6] Dkt. 8 at 8. Plaintiff, on the other hand, alleges that the State Department and consular officers have a duty to adjudicate his father's visa within a reasonable period of time, and that this duty has not been fulfilled by the issuance of the Section 221(g) notice. Dkt. 1 ¶¶ 4, 5.

Judicial review of agency inaction is limited under both the APA and the Mandamus Act and, thus, this initial issue is determinative of Plaintiff's claims. As the Supreme Court held in *Norton v. Southern Utah Wilderness Alliance*, APA Section 706 claims asking a court to "compel agency action unlawfully withheld or unreasonably delayed" may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed *Norton*'s prohibition on judicial review of APA

---

[6] Defendants also correctly argue that Plaintiff cannot establish Article III standing to bring the suit. Dkt. 7. To establish Article III standing, a plaintiff must establish an (1) injury in fact that is (2) fairly traceable to Defendants' conduct and is (3) likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs generally must assert their own legal rights and interests, and cannot base their claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiff has not established how his own rights were violated; rather, Plaintiff's claims revolve around the alleged violation of his father's rights. Additionally, as noted by Defendants, the Supreme Court recently decided that U.S. citizens have "no interest in the issuance of a visa to an offshore family member or in the underlying processes." Dkt. 8 at 6; *Department of State v. Muñoz*, 602 U.S. 899, 908-09, 916-17 (2024). Without providing a basis for why Plaintiff should have Article III standing for a third-party claim, Plaintiff lacks Article III standing, and this provides another basis on which to dismiss.

Section 706 claims as a part of APA Section 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA Section 706 claim. *See id.* at 216 (affirming dismissal for lack of subject-matter jurisdiction where the plaintiffs' APA claim was not based on a discrete legal requirement); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing *Norton*'s holding as jurisdictional); *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").

The Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the Supreme Court's conclusion in *Norton* that "the only agency action that can be compelled under the APA is action legally required" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (internal citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and, as is the case under the APA, such a clear duty is a "threshold requirement[ ]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). In assessing whether a clear duty or a discrete, required agency action exists, courts look for a "clear indication of binding commitment," *Norton*, 542 U.S. at 69, in "the text of the relevant statutes and regulations," *Lovo*, 107 F.4th at 211. "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command . . . to hold that

an agency is compelled to act." *Id.* (citing *Gonzalez*, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." *Id.* at 212.

Federal regulations provide that, when a visa application has been executed, "the consular officer *must* issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121 (a) (emphasis added); *see also* 22 C.F.R. § 42.81(a) (providing that "the consular officer must issue the visa, refuse the vias under § 221(a) or (g) . . . or . . . discontinue granting the visa"). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly provides that consular officers may discharge their duties by refusing a visa. 22 C.F.R. § 41.121 (a); 22 C.F.R. § 42.81(a). Specifically, 22 C.F.R. § 41.121(a) provides that a Section 221(g) refusal constitutes a qualifying refusal, stating that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [Section] 221(g)." The State Department Foreign Affairs Manual further clarifies, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Thus, Defendants here have already taken the discrete action required of them by issuing a Section 221(g) notice of refusal for administrative processing and thus have satisfied their obligation to adjudication the visa application. After a refusal, such as a Section 221(g) refusal for administrative processing, has been made, no further discrete action is required under the INA, 22 C.F.R. § 41.121(a) or § 42.81, or any other pertinent statute or regulation. Put another way, "[i]n refusing Plaintiff['s father's] application[] under 221(g) after [his] interview[] with consular officers, [Defendants] complied with the regulations governing visa adjudications. [Defendants]

thereby discharged [their] nondiscretionary duty."[7] *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024); *see also Parashkooh v. Platek*, 2025 WL 1732518, at *5 (E.D. Va. June 18, 2025) (holding same with respect to F and/or J category nonimmigrant visas). The finding that this Court does not have subject-matter jurisdiction is consistent with this District Judge's past rulings on similar 221(g)-related cases. *See Arshadi v. Platek*, 2025 WL 1570967, at *4 (E.D. Va. June 3, 2025) (dismissing complaint regarding delays in the adjudication of visa applications after receiving a 221(g) refusal for lack of subject-matter jurisdiction); *Parashkooh v. Platek*, 2025 WL 1732518, at *5 (E.D. Va. June 18, 2025) (same); *Patrick v. Rubio*, 2026 WL 612666, at *4 (E.D. Va. Mar. 4, 2026) (same); *Naseri v. Rubio*, 2025 WL 1888249, at *4 (E.D. Va. July 8, 2025) (same). Additionally, other judges in this Circuit have also specifically reached this same conclusion with respect to K-1 visas. *See Turner v. Blinken*, 2024 WL 4957178, at *6 (D. Md.

---

[7] Many courts, both within the Fourth Circuit, and in other Circuits, have come to the same conclusion. *See Sarshartehran v. Rubio*, 2025 WL 1261787, at *6 (W.D. Va. May 1, 2025) (holding that after a Section 221(g) refusal, "there is no further discrete action consular officers must take to satisfy their obligations"); *Aslam v. Heller*, 2024 WL 3535389, at *6-7 (M.D.N.C. July 23, 2024) (holding that, for a family visa application, immigrant visa refusals under INA Section 221(g) are a "discrete action" thereby "discharge[ing the defendants'] nondiscretionary duty"); *Farahani v. Laitinen*, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); *Turner v. Blinken*, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to [Section] 221(g)"); *Berenjian v. Blinken*, 2024 WL 3732451, *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject-matter jurisdiction); *accord Denisova v. Mayorkas*, 2024 WL 2043664, at *3-4 (W.D. Pa. May 8, 2024) (holding the same); *Conley v. United States Dep't of State*, 2024 WL 1640074, at *4-5 (D. Mass. Apr. 16, 2024) ("Because [the] defendants have acted on the visa application, they have not failed to take any legally required action . . . .").

Dec. 3, 2024) ("Absent further authority, Plaintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal of Quentin's visa pursuant § 221(g)."). Thus, this Court lacks jurisdiction.

Seeking to avoid this conclusion and the clear weight of authority in this regard, Plaintiff argues that a 221(g) refusal does not satisfy the State Department's duty because the 221(g) refusal is not necessarily "final." *See* Dkt. 1. This Court defers the question of whether a refusal under Section 221(g) is a "final adjudication," because this Court concludes that there is no *clear* mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused. Nothing in the regulations provide a "'specific, unequivocal command' for [the] State [Department] to issue a final, unreviewable decision." *Yaghoubnezhad*, 734 F. Supp. 3d at 102 (quoting *Norton*, 542 U.S. at 63): *see also Ramizi v. Blinken*, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); *Farahani*, 2025 WL 360833, at *4 (holding the same). Further, the absence of any finality requirement in 22 C.F.R. § 41.121(a) or § 42.81 is telling because, although the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused. 22 C.F.R. § 41.121(a). By refusing the visa applications, Defendants here have already taken this discrete, required agency action, and Plaintiff has not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. *Norton*, 542 U.S. at 69.

In sum, the Court lacks jurisdiction over Plaintiff's claims because Defendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing a Section 221(g) refusal for administrative processing, and there is no further discrete, required agency action that the Court could compel Defendants to take.  Accordingly, Defendants' Motion will be granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss for lack of subject-matter jurisdiction (Dkt. **7**) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
July 22, 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge